# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JALAILA HARDY, ) | |
| DAMEAN HAYES, ) | |
| LANALA HAYES, ) | |
| LASASHA HAYES, and ) | |
| JAVETTE CLICK, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | Case No. |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| **SERVE VIA CERTIFIED MAIL** ) | |
| ) | |
| U.S. Attorney for the Western District of ) | |
| Missouri ) | |
| Attention: Civil Process Clerk ) | |
| 400 East 9th Street, Room 5510 ) | |
| Kansas City, Missouri 64106 ) | |
| ) | |
| **AND** ) | |
| ) | |
| Attorney General of the United States ) | |
| Department of Justice ) | |
| Room 5111 ) | |
| 10th & Constitution Avenue, NW ) | |
| Washington, D.C. 20530 ) | |

## COMPLAINT

COME NOW Plaintiffs, Jalaila Hardy, Damean Hayes, Lanala Hayes, Lasasha Hayes, and Javette Click, by and through their attorney of record, Andrew L. Veatch, and for their causes of action against Defendant United States of America, state and aver as follows.

## JURISDICTION, VENUE, AND PARTIES

1. This cause of action arises from Defendant United States of America's medical negligence provided by agents and/or employees of the United States on Community Health Center premises in Jefferson City, Missouri at 1511 Christy Drive.

2. Jurisdiction in this Court is proper under the Federal Tort Claims Act ("FTCA") at 28 U.S.C. § 1346(b) because the law of the state where the act or omission occurred determines the liability of the United States.

3. Venue in the Central Division of this Court is proper on all counts under 28 U.S.C. § 1402(b) (2000) and Local Rule 3.2(b) because the events or omissions giving rise to these claims occurred in Cole County, Missouri.

4. Defendant United States of America ("Defendant USA" or "Defendant") is the only proper Defendant in an FTCA case, 28 U.S.C. § 2679.

5. Plaintiff Jalaila Hardy, an individual, is a resident of Jefferson City, Cole County, Missouri.

6. Plaintiff Damean Hayes, an individual, is a resident of Jefferson City, Cole County, Missouri.

7. Plaintiff Lanala Hayes, an individual, is a resident of Houston, Texas.

8. Plaintiff Lasasha Hayes, an individual, is a resident of Houston, Texas.

9. Plaintiff Javette Click, an individual, is a resident of Moreno Valley, California.

10. Plaintiffs Jalaila Hardy, Damean Hayes, Lanala Hayes, Lasasha Hayes, and Javette Click (hereinafter "Plaintiffs") are the natural-born children of Jessie Hughes (hereinafter "Hughes" or "Decedent").

11. Plaintiffs are proper parties to bring this action for the wrongful death of Jessie Hughes, pursuant to Section 537.080 R.S.Mo.

12. At the time of the events described in this Petition, Hughes was being treated by Amanda Naumann, N.P., (hereinafter, "Naumann") as an agent or employee of the Community Health Center.

13. At the time of the events described in the Petition, Naumann was supervised by Megan King, D.O., (hereinafter, "King") who regularly reviewed, evaluated, approved, and signed off on the work of Naumann, and King was also an agent or employee of the Community Health Center.

14. At all relevant times, Defendant USA operated, controlled, and maintained the Community Health Center in Jefferson City, Missouri as a Federally Qualified Health Center as set out in 42 U.S.C. § 254b, at which Hughes was a patient.

## APPLICABLE LAW AND POLICY

15. Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1-14 as if fully set forth herein verbatim.

16. The FTCA is the only available remedy which authorizes recovery for death caused by negligent federal government employees acting within the scope of their federal employment. 28 U.S.C. § 1346(b).

17. The FTCA is the exclusive remedy for all claims "resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment[.]" 42 U.S.C. § 233(a).

18. The FTCA is the exclusive money damages remedy for negligent acts or omissions of federal government employees acting within the scope of their federal employment. 28 U.S.C. § 2679.

19. This Court has exclusive jurisdiction to hear FTCA claims. *Wood v. United States*, 961 F2d 195, 197 (Fed. Cir. 1992).

20. Claimants presented their administrative tort claim to the appropriate government agency for adjudication on January 31, 2019, before filing suit in federal court. 28 U.S.C. § 2675(a), which was presented to the appropriate government agency within two years of accrual. 28 U.S.C. § 2401(b).

21. Claimants can file a federal court complaint any time six months after presenting the claim if no agency action has been taken. 28 U.S.C. § 2401(b), as is the case in this matter.

22. The FTCA provides that the law of the state where the act or omission occurred determines the liability of the United States. 28 U.S.C. § 1346(b), and the substantive tort law of the state determines whether the plaintiff has a valid cause of action. *Henderson v. United States*, 846 F.2d 1233 (9th Cir. 1988).

23. Plaintiff brings this action pursuant to RSMo § 538.210.

## FACTUAL ALLEGATIONS

24. Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1-23 as if fully set forth herein verbatim.

25. At all times herein concerned, Defendant USA by and through its employees and or agents at the Community Health Center held Community Health Center out to the public in general, and in particular, Jessie Hughes, the Decedent, as being a

medical facility with sufficient equipment, personnel, and staff to properly provide services, care and treatment to Hughes, having competent physicians, surgeons, technicians, and nurses in its employ or control who possessed and exercised the same or higher level of training, knowledge, and skill as other members in good standing in their professions.

26. At all times herein concerned, King was a physician licensed to practice medicine in the State of Missouri, and held herself out to the public in general, and Jessie Hughes, as being a physician able to render proper and adequate care and treatment to Jessie Hughes.

27. At all times herein concerned, Naumann was a licensed nurse practitioner in the State of Missouri, and held herself out to the public in general, and Jessie Hughes, as being a nurse practitioner able to render proper and adequate care and treatment to Jessie Hughes.

28. At all times herein mentioned King and Naumann were the employees, agents and/or servants, either actual or apparent, of Defendant USA, and were acting within the course and scope of said employment, agency and/or servitude. Defendant USA is therefore vicariously liable for the negligent and/or careless acts and omissions of King and Naumann pursuant to the doctrine of *respondeat superior*.

29. On February 3, 2017, Jessie Hughes presented to Community Health Center and was seen by Naumann with complaints of back pain, fatigue, insomnia, and nervousness.

30. On February 3, 2017, Naumann noted in her chart that Jessie Hughes had tested positive for tuberculosis, and was currently taking Isoniazid.

31. On said date, Naumann also conducted an "SBIRT Screening" to evaluate Jessie Hughes' alcohol use, and scored a seven (7).

32. On February 3, 2017, among other things, Naumann diagnosed Jessie Hughes with back pain and hyperthyroidism, prescribed thyroid medication for Hughes, drew labs for Hughes, and recommended non-steroidal anti-inflammatory drugs (NSAIDs) for pain.

33. Community Health Center's chart for Jessie Hughes on February 3, 2017 indicates that the encounter from that date was submitted to supervising provider King for review, and was approved by King.

34. The bloodwork drawn during Jessie Hughes' February 3, 2017 appointment with Community Health Center was tested sometime shortly after said appointment and showed liver enzyme levels (ALT and AST) approximately three (3) times higher than the normal range.

35. On information and belief, King and Naumann were notified of those blood test results.

36. On February 15, 2017, Naumann wrote a referral for Jessie Hughes to a clinical psychologist, and noted that Jessie Hughes suffered from severe alcohol use disorder and that her liver enzymes were continuously high.

37. At no point on February 3, 2017, nor February 15, 2017, did King or Naumann advise Jessie Hughes that she should stop drinking immediately, or to modify,

change or stop the medications she was taking, including but not limited to Isoniazid or NSAIDs.

38. On July 10, 2017, Jessie Hughes was again seen at Community Health Center by Naumann, complaining of a sore throat, dizziness, and back pain.

39. During Hughes' appointment on July 10, 2017, another "SBIRT Screening" was done to evaluated Hughes' alcohol use, and she scored a one (1).

40. During the July 10, 2017 appointment, blood was again drawn, and tested shortly thereafter.

41. Ms. Hughes' bloodwork from July 10, 2017 showed liver enzyme levels (ALT and AST) more than twenty (20) times higher than the normal range.

42. King and Naumann ordered additional testing of Jessie Hughes during the time period running from July 19, 2017 to July 28, 2017, with a final recommendation for a CT scan of Ms. Hughes' abdomen.

43. The CT scan of Jessie Hughes' abdomen taken on July 31, 2017 at Capital Region Medical Center showed findings suggestive of hepatitis.

44. On August 4, 2017, Jessie Hughes was seen in the Emergency Room at Capital Region Medical Center for jaundice and abdominal pain, where she was diagnosed with drug induced liver toxicity, caused by Isoniazid, and hepatitis.

45. On October 4, 2017, Jessie Hughes died as a result of liver failure and related compilations caused by the care she received from Defendant and its employees and/or agents.

46. Defendant USA, by and through its employees and agents, King and Naumann, breached a duty of care to Jessie Hughes and committed the following acts of

negligence and carelessness by failing to measure up to the standards of due care, practice and skill required by members of their profession, to-wit:

a. failing to coordinate care with Jessie Hughes other health care providers;

b. failing to counsel Jessie Hughes of the risks involved with consuming alcohol while taking Isoniazid, NSAIDs and other medications;

c. failing to counsel Jessie Hughes on the symptoms of liver injury;

d. failing to counsel Jessie Hughes to stop taking Isoniazid immediately, and/or to stop taking NSAIDs immediately, and/or to stop drinking alcohol immediately after receiving the results of Ms. Hughes' February 3, 2017 blood test;

e. failing to refer Jessie Hughes to a specialist for evaluation after receiving the results of Ms. Hughes' February 3, 2017 blood test;

f. failing to establish a care plan, including follow-up monitoring (with weekly liver tests/monitoring), after receiving the results of Ms. Hughes' February 3, 2017 blood test; and

g. failing to consider and/or recommend other medications to treat Jessie Hughes' conditions.

47. The foregoing negligence and carelessness of Defendant directly and proximately caused, or directly and proximately contributed to cause, Jessie Hughes to suffer severe, permanent and progressive harms to her health and specifically her liver, resulting in liver failure and death. In addition to death, Jessie Hughes has required significant medical treatment, prolonged hospitalizations, medicines, therapies,

doctor's visits, physical deconditioning, pain, suffering, scarring, weakness, loss of mobility, and loss of life's enjoyment as a direct and proximate result of the same.

48. As a direct and proximate result of the foregoing negligence and carelessness of Defendant, Jessie Hughes was harmed economically in that medical bills have and will be incurred for medical care, therapies, medications, rehabilitative care, hospice and palliative care and treatment, in excess of Three Hundred Ten Thousand Five Hundred Seventy-Seven Dollars and Fifty-Three Cents ($310,577.53).

49. As a direct and proximate result of Jessie Hughes' death, Plaintiffs were damaged and are entitled to recover fair and just damages pursuant to Section 537.090 RSMo. for the pecuniary losses suffered by reason of the death of Hughes, funeral expenses, and the reasonable value of the services, companionship, love, comfort, and support, together with any damages Hughes may have suffered between the time of her injury and death as provided herein which include but are not limited to pain and suffering and emotional distress in an amount to be proven with reasonable certainty at trial.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Defendant United States of America on Plaintiffs' Complaint, award a fair and reasonable amount to adequately compensate Plaintiffs for all of his damages herein as well as costs of this action and attorneys' fees pursuant to 42 U.S.C. § 1988 (2000), and for such other and further relief as this Court deems just in the circumstances.

**Respectfully submitted,**

**/s/ Andrew L. Veatch**
**MO Bar #62500**
**Eng & Woods**
**903 E. Ash Street**
**Columbia, MO 65203**
**Telephone:    573-874-4190**
**Facsimile:    537-874-4192**
**e-mail:       dveatch@engandwoods.com**
*Attorneys for Plaintiffs*